# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**GEOFFREY ZUNIGA**                                    **CIVIL ACTION**

**VERSUS**                                                    **No. 13-300**

**TRANSOCEAN OFFSHORE**                          **SECTION I**
**DEEPWATER DRILLING, INC.**

## ORDER AND REASONS

Before the Court is a motion[1] for partial summary judgment filed by defendant, Transocean

Offshore Deep Water Drilling ("Transocean"). Plaintiff, Geoffrey Zuniga ("Zuniga"), has filed an

opposition,[2] and defendant has replied.[3] For the following reasons, the motion is **GRANTED**.

### Background

Zuniga was employed by ART Catering, which trained him to be a "steward/galleyhand."[4]

ART Catering assigned him to work aboard Transocean's D/S DISCOVERER DEEP SEAS, where

ART Catering provided housekeeping and catering services.[5] The focus of Zuniga's duties were the

bunk and galley areas.[6] In his complaint, Zuniga alleges that on or about January 9, 2013, as he "was

performing his assigned duties aboard the DISCOVERER DEEP SEAS off the Louisiana coast, he

slipped and fell on a foreign substance believed to be oil in a walkway on the deck of the vessel."[7]

---

[1] R. Doc. No. 18.
[2] R. Doc. No. 24.
[3] R. Doc. No. 28.
[4] R. Doc. No. 18-1, ¶ 3.
[5] R. Doc. No. 1-1, ¶ 6; R. Doc. No. 18-8, at 1.
[6] R. Doc. No. 18-1, ¶ 7.
[7] R. Doc. No. 1, ¶¶ 5-6.

Transocean seeks summary judgment on Zuniga's Jones Act claim on the ground that Zuniga is not a direct nor borrowed employee of Transocean.[8] Zuniga concedes that he was not a direct employee of Transocean.[9] The Court proceeds to determine whether Zuniga was a borrowed employee of Transocean at the time of his accident.

## Law and Analysis

### I. Summary Judgment Standard

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."

---

[8]R. Doc. No. 18-2, at 1.
[9]R. Doc. No. 24, at 2.

-2-

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**II. Borrowed Employee Analysis**

**A. Statements of Material Fact**

In the statement[10] of material facts that accompanies Zuniga's opposition, he fails to dispute any of the fifteen paragraphs set forth by defendant in its statement[11] of material facts. Accordingly, the facts set forth by defendant in its statement are deemed admitted.[12]

**B. Borrowed Employee Factors**

In order to determine borrowed employee status, courts consider nine factors:

(1) Who had control over the employee and the work he is performing, beyond mere suggestion of details or cooperation?

(2) Whose work was being performed?

(3) Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

---

[10]R. Doc. No. 24-5.

[11]R. Doc. No. 18-1.

[12]L.R. 56.2 ("All material facts in the moving party's statement [of material facts] will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement [of material facts].").

(4) Did the employee acquiesce in the new work situation?

(5) Did the original employer terminate his relationship with the employee?

(6) Who furnished tools and place for performance?

(7) Was the new employment over a considerable length of time?

(8) Who had the right to discharge the employee?

 (9) Who had the obligation to pay the employee?

*Brown v. Union Oil Co.*, 984 F.2d 674, 676 (5th Cir. 1993) (citing *Ruiz v. Shell Oil Co.*, 413 F.2d 310 (5th Cir. 1969)); *Melancon v. Amoco Prod. Co.*, 834 F.2d 1238, 1244 (5th Cir. 1988).

Ordinarily, the issue of borrowed employee status is a question of law to be determined by the Court. *Brown*, 984 F.2d at 677. However, some cases involve conflicting evidence and factual disputes with respect to the borrowed employee issue and require findings by a factfinder. *Id.* (citations omitted). In such cases, summary judgment is not appropriate. *Id.*

The Court considers each of the nine factors factor in turn to determine whether a genuine issue of material fact precludes summary judgment.

**1. Who had control over the employee and the work he was performing, beyond mere suggestion of details or cooperation?**

The first factor requires the Court to distinguish "between authoritative direction and control, and mere suggestion as to details or the necessary co-operation where the work furnished is part of a larger undertaking." *Ruiz*, 413 F.2d at 313 (quotation omitted). "Although no one of the nine factors is decisive, [the Fifth Circuit has] stated that 'the central question in borrowed servant cases is whether someone has the power to control and direct another person in the performance of his work.'" *Jackson v. Total E & P USA, Inc*., 341 F. App'x 85, 87 (5th Cir. 2009) (quoting *Hebron*

-4-

*v. Union Oil Co. of Cal.*, 634 F.2d 245, 247 (5th Cir. 1981). The parties disagree on the application of the first factor to this case, but the following facts are undisputed.

Each morning, Zuniga would meet with his ART Catering supervisor, or "camp boss," concerning the ART crew's daily job duties.[13] He took no direction from any Transocean employees relative to his job duties as a galleyhand,[14] and his only communications with Transocean employees were casual conversations."[15] At the time of his accident, Zuniga was performing a task at the request of the ART Catering cook," and Zuniga reported his accident to his ART catering supervisor.[16] After his accident, Zuniga's ART Catering supervisor re-assigned him from the galley to the dining area.[17]

In his opposition as to this factor, Zuniga relies exclusively on a 65-page contract between Transocean and ART Catering.[18] ART Catering persuasively argues that Zuniga's approach improperly focuses on the relationship between ART Catering and Transocean.

The Court agrees that, even if Transocean exercised a certain amount of control over ART Catering pursuant to that contract, the undisputed facts show that Zuniga took orders from ART Catering personnel as to "what work to do, and when and where to do it." *Melancon*, 834 F.2d at 1245. The fact that Zuniga testified that he "basically knew what [his] job entailed" on a day-to-day basis does not create a genuine issue of material fact.[19] In *Melancon*, the Fifth Circuit concluded that a plaintiff's "specialized skills" do not bar a finding of borrowed employee status. *See id.* (citing

---

[13]R. Doc. No. 18-1, ¶¶ 8-9; R. Doc. No. 18-5, at 5, 17; R. Doc. No. 24-2, at 9.
[14]R. Doc. No. 18-1, ¶ 12; Doc. No. 18-5, at 6.
[15]R. Doc. No. 18-1, ¶ 11; R. Doc. No. 18-5, at 6-7, 15.
[16]R. Doc. No. 18-1, ¶¶ 10, 13; R. Doc. No. 18-5, at 8.
[17]R. Doc. No. 18-1, ¶ 2; R. Doc. No. 18-5, at 10-11, 13-14.
[18]R. Doc. No. 24, at 2-7.
[19]R. Doc. No. 18-5, at 6.

*Huff v. Marine Tank Testing Corp.*, 631 F.2d 1140 (4th Cir. 1980)). Accordingly, the admissible evidence weighs against borrowed employee status with respect to this factor.

### 2. Whose work was being performed?

Transocean argues simply that plaintiff was "performing the work of ART Catering as a galley hand and 'working in the scullery.'"[20] Without providing any record citation or legal authority, Zuniga asserts, "It should be undisputed that the work being performed was that of Transocean."[21] In light of the parties' arguments, the Court concludes this factor is neutral. *See Richards v. Transocean Int'l, Inc.*, No. 09-7236, 2011 WL 4381723, at *3 (E.D. La. Sept. 20, 2011); *Robertson v. W&T Offshore, Inc.*, 712 F. Supp. 2d 515, 530 (W.D. La. 2010).

### 3. Was there an agreement, understanding, or meeting of the minds between the original and the borrowing employer?

Zuniga argues that the contract between Transocean and ART Catering "addresses virtually every facet and nuance of the work that ART Catering was performing for Transocean."[22] Transocean highlights that the same contract expressly provides that ART Catering's personnel "shall be regarded as the personnel of [ART Catering] alone."[23] Considering the arguments of the parties, which rely solely on the contract, the Court finds that this factor weighs against borrowed employee status. *See Richards*, 2011 WL 4381723, at *3.

### 4. Did the employee acquiesce in the new work situation?

---

[20]R. Doc. No. 18-2, at 8-9 (quoting R. Doc. No. 18-5, at 6).
[21]R. Doc. No. 24, at 7.
[22]R. Doc. No. 24, at 8.
[23]R. Doc. No. 28-1, at 1.

"The focus of this factor is whether the employee was aware of his work conditions and chose to continue working in them." *Brown v. Union Oil Co. of California*, 984 F.2d 674, 678 (5th Cir. 1993).

ART Catering hired Zuniga in December of 2012, and his accident occurred a few weeks later on January 9, 2013.[24] Neither party cites legal authority in their cursory arguments as to this factor. Zuniga argues merely that his "acquiescence in the new work situation is evident in his reporting to and working about" the vessel through the date of his accident.[25] Transocean simply states that "plaintiff did not have to acquiesce to a 'new work situation'" because "[t]he contract between ART Catering and Transocean was to simply provide catering services aboard the vessel."[26] Drawing all justifiable inferences in Zuniga's favor, the Court concludes this factor weighs in favor of borrowed employee status.

**5. Did the original employer terminate its relationship with the employee?**

The parties agree that ART Catering did not terminate its relationship with Zuniga.[27] Accordingly, this factor weighs against borrowed employee status.

**6. Who furnished the tools and place of performance?**

 Transocean furnished the place of employment.[28] With respect to tools, Zuniga argues that Transocean furnished "utensils, crockery, cutlery and other tableware, . . . freezers, coolers, stoves,

---

[24]R. Doc. No. 18-7, at 1; *see also* R. Doc. No. 24, at 9.
[25]R. Doc. No. 24, at 8.
[26]R. Doc. No. 18-2, at 9.
[27]R. Doc. No. 18-2; R. Doc. No. 24.
[28]R. Doc. No. 24-2, at 14-15.

ovens, mixer[s], ice maker[s], and other permanently affixed equipment," and "coveralls and gloves."[29]

With respect to freezers, coolers, stoves, ovens, mixers, ice makers, and other permanently affixed equipment, the contract indicates that Transocean was responsible for providing these tools.[30] With respect to utensils, crockery, cutlery, and other tableware, however, the contract indicates that Transocean would reimburse ART Catering for these items initially, and replacements would be at ART Catering's expense.[31] Finally, ART Catering was responsible for providing all "foodstuffs, beverages, condiments, and drinking water, and any other provisions necessary and desirable for the provision of Services" pursuant to the Contract, as well as toilet paper, napkins, cleaning supplies, mattresses, blankets, sheets, and towels.[32]

Contrary to Zuniga's characterization, the contract provides that ART Catering was responsible for supplying uniforms, coveralls, and safety clothing, including gloves.[33] As to his uniform, Zuniga testified that he wore a "standard issue, ART Catering, uniform."[34] Zuniga has submitted the deposition of Amariah Bacchus, however, which suggests that sometimes ART Catering employees wore Transocean gloves and Transocean coveralls.[35] In any case, Zuniga failed to contest Transocean's statement of material fact that "plaintiff was provided uniforms by his employer, ART Catering."[36] Even considering Bacchus's testimony on this subject, and

---

[29]R. Doc. No. 24, at 8.
[30]R. Doc. No. 24-2, at 15.
[31]R. Doc. No. 24-2.
[32]R. Doc. No. 24-2, at 14-15.
[33]R. Doc. No. 24-2, at 15; *see also* R. Doc. No. 24-2, at 7-8.
[34]R. Doc. No. 18-5, at 4.
[35]R. Doc. No. 24-3, at 2-5.
[36]R. Doc. No. 18-1, ¶ 5.

notwithstanding the overly abridged presentation of that deposition testimony, the Court concludes this factor is neutral. *Richards*, 2011 WL 4381723, at *4.

### 7. Was the new employment over a considerable length of time?

Where an employee's length of employment with the borrowing employer is "considerable," the seventh factor supports a finding of borrowed employee status. Although ART Catering and Transocean may have been in a contractual relationship for several years at the time of the accident, Zuniga had only been employed by ART Catering for a few weeks.[37] Neither party has supported any legal authority in support of its position. Accordingly, the Court finds that the seventh factor is neutral. *See Brown*, 984 F.2d at 679.

### 8. Who had the right to discharge the employee?

"Termination of [a] plaintiff's employment with his nominal employer is not the focus of this factor." *Robertson*, 712 F. Supp. 2d at 534. "[W]here the borrowing employer (here, [allegedly, Transocean]) has the right to terminate the borrowed employee's services with the borrowing employer, even though the borrowing employer does not have the right to terminated the borrowed employee's position with the nominal employer (here, [ART Catering]), the right to discharge factor is satisfied." Robertson, 712 F. Supp. 2d at 534; *see also Melancon*, 834 F.2d at 1246. Here, Zuniga argues that Transocean retained the authority to remove ART Catering employees from the vessel,[38] and Transocean has failed to respond to this argument. Accordingly, this factor weighs in favor of borrowed employee status.

---

[37] R. Doc. No. 24, at 9.
[38] R. Doc. No. 24, at 9; R. Doc. No. 24-2, at 10.

**9. Who had the obligation to pay the employee?**

The parties agree that ART Catering had the obligation to pay Zuniga.[39] This factor weighs against borrowed employee status.

**Conclusion**

Considering each of the nine factors, and particularly the first factor, as well as the admissible evidence, the Court concludes that there is no genuine issue of material fact and that Transocean was not Zuniga's borrowing employer.

Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment is **GRANTED**.

**IT IS FURTHER ORDERED** that Zuniga's Jones Act claim against Transocean is **DISMISSED WITH PREJUDICE**.[40]

New Orleans, Louisiana, November 8, 2013.

LANCE M. AFRICK
**UNITED STATES DISTRICT JUDGE**

---

[39]R. Doc. No. 24, at 9; R. Doc. No. 18-1, at 1.
[40]The parties agreed at a previous status conference that any dismissal of this claim would eliminate Zuniga's right to a jury trial.

-10-